IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CINCINNATI SPECIALTY UNDERWRITERS INSURANCE COMPANY,<br><br>*Plaintiff*,<br><br>v.<br><br>CHICAGOLAND EMERGENCY VEHICLE SHOW, LLC ET AL.,<br><br>*Defendant*. | No. 19 C 7688<br><br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Cincinnati Specialty Underwriters Insurance Company ("CSU"), filed this suit against Chicagoland Emergency Vehicle Show, LLC ("CEVS"), seeking declaratory judgment that it has no duty to defend or indemnify CEVS for a lawsuit filed against CEVS for alleged hearing loss suffered by a spectator at a municipal event. The only dispute between the parties is whether the "flash bang" device that was detonated as part of a demonstration falls within the "fireworks" exception contained within the policy. Before the Court is Plaintiff's motion for summary judgment. (Dkt. 73). For the following reasons, Plaintiff's motion [73] is granted.

## BACKGROUND

In July 2019, Michael Rafferty filed a complaint in Kane County Circuit Court against CEVS, the Village of Oswego ("Oswego"), the Kendall County Special Response Team, a task force of the Office of the Sheriff of Kendall County, Oswego Firefighters Local #4773 ("Local #4773"), and the Oswego Fire Protection District ("OFPD"). (Dkt. 1 at ¶ 14). Rafferty filed a First Amended Complaint ("Underlying Lawsuit") on October 2, 2019, against CEVS, Oswego,

1

#4773, OFPD, and Kendall County Sheriff Dwight Baird. (Dkt. 1-1). In the Underlying Lawsuit, Rafferty claims that CEVS acted negligently and caused him physical injury, "permanent tinnitus, hearing loss, pain and suffering, medical expenses and interfered with his ability to enjoy life." (Dkt. 1-1 at ¶¶ 23–30). He claimed these injuries resulted from the detonation of a "flash bang" device that was part of a demonstration at the 21st Annual Chicagoland Emergency Vehicle Show in downtown Oswego, Illinois ("the Show"). (Dkt. 1 at ¶ 14; Dkt. 1-1 at ¶¶ 23–30).

CSU in turn filed a lawsuit in this Court seeking Declaratory Judgment against CEVS as well as Oswego, #4773, OFPD, and Kendall County Sheriff Dwight Baird, with Mr. Rafferty joined as a necessary party. (Dkt. 1). Defendants Oswego, #4773, OFPD, and Kendall County Sheriff Dwight Baird were voluntarily dismissed prior to the filing of this motion. (Dkt. 35; Dkt. 48; Dkt. 72). The below facts are admitted by both parties as accurately representing the claims made by Rafferty in the Underlying Lawsuit. (Dkt. 75; Dkt. 79).

### A. Underlying Lawsuit

On Saturday, August 4, 2018, Mr. Rafferty happened upon the Show when driving in downtown Oswego. (Dkt. 75 at ¶ 13; Dkt. 79 at ¶ 13; Dkt. 1-1 at ¶ 12). The Show took place on August 3rd and 4th, 2018, and featured displays of emergency vehicles and demonstrations of rescue operations, firefighting, and other safety exhibits. (Dkt. 75 at ¶¶ 11, 13; Dkt. 79 at ¶¶ 11, 13; Dkt. 1-1 at ¶¶ 8–9). The Show also hosted children's activities and provided food and souvenirs. (Dkt. 75 at ¶ 12; Dkt. 79 at ¶ 12; Dkt. 1-1 at ¶ 9). At the Show, the Special Response Team of the Kendall County Sheriff's Department ("Special Response Team") was scheduled to demonstrate a "high risk SWAT extraction". (Dkt. 75 at ¶ 12; Dkt. 79 at ¶ 12; Dkt. 1-1 at ¶ 11). When Mr. Rafferty noticed the Show taking place, he parked his car and walked along to view displays at the Show. (Dkt. 75 at ¶ 13; Dkt. 79 at ¶ 13; Dkt. 1-1 at ¶ 12–14).

Mr. Rafferty noticed a "large combat or military vehicle" as he was walking and understood some sort of demonstration to be taking place. (Dkt. 75 at ¶ 13; Dkt. 79 at ¶ 13; Dkt. 1-1 at ¶ 14–17). He walked towards the demonstration to attain a better view and encountered no barricades, officers, or employees at the show preventing him from moving closer to the demonstration. (Dkt. 75 at ¶ 13; Dkt. 79 at ¶ 13; Dkt. 1-1 at ¶¶ 16–18). There were also no warnings displayed as he neared the demonstration. (*Id.*).

As Mr. Rafferty approached the Special Response Team's demonstration, he observed Special Response Team members move towards a van on the street where Mr. Rafferty was walking. (Dkt. 75 at ¶ 14; Dkt. 79 at ¶ 14; Dkt. 1-1 at ¶ 19). Without warning, the Special Response Team detonated two Noise Flash Diversionary Devices, often referred to as flash bang devices, on the van. (*Id.*). The detonation caused "successive and extremely loud explosions and flashes of light." (*Id.*). The explosions momentarily blinded Mr. Rafferty, and he experienced loud ringing in his ears. (Dkt. 75 at ¶ 14; Dkt. 79 at ¶ 14; Dkt. 1-1 at ¶¶ 19–22). Mr. Rafferty felt disoriented and departed the Show after the detonations took place. (*Id.*). The Underlying Lawsuit describes flash bang devices as "inherently dangerous explosive devices originally developed for military use that produce high intensity light and extremely loud impulse noise." (Dkt. 1-1 at ¶ 20).

**B. Insurance Policy**

CSU issued an insurance policy to CEVS ("the Policy") which supplied commercial general liability coverage, effective from August 3rd through August 6th, 2018. (Dkt. 75 at ¶ 18; Dkt. 79 at ¶ 18; Dkt. 1-2). The Policy included a duty to defend and indemnify CEVS for bodily injury or property damage under covered circumstances. (Dkt. 75 at ¶ 19; Dkt. 79 at ¶ 19). The pertinent portion of the Policy is an exclusion related to "Fireworks or Pyrotechnics" ("the Fireworks Exclusion"). The exclusion states the Policy "does not apply to 'bodily injury',

3

'property damage' or 'personal and advertising injury' . . . [a]rising out of the ownership, operation, maintenance, possession, use of, manufacturing, distribution, selling, servicing or storing of any fireworks or pyrotechnics by the insured or any other person or organization; or . . . [i]ncluded within the 'products/completed operations hazard' with respect to fireworks or pyrotechnics." (Dkt. 1-2; Dkt. 75 at ¶ 24; Dkt. 79 at ¶ 24). The exclusion defines "fireworks" as "a device consisting of explosives and combustibles set off to generate colored lights, smoke or noise." (*Id.*).

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).

In Illinois, "the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment." *JAR Labs. L.L.C. v. Great Am. E & S Ins. Co.*, 945 F. Supp.2d 937, 942 (N.D. Ill. 2013) (citing *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 818–19 (7th Cir. 2008)). A court determines whether an insurer has a duty to defend by examining the underlying complaint and the language of the insurance policy. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 154–55 (2005). If the alleged facts in the

4

underlying complaint potentially come within policy coverage, a duty to defend exists, "even if the allegations are groundless, false, or fraudulent." *United States Fidelity & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 73 (1991). "The burden of proving that a claim falls within an exclusion rests squarely on the insurer. . . ." *Hurst-Rosche Engineers, Inc. v. Commercial Union Ins. Co.* 51 F.3d 1336, 1342 (7th Cir. 1995). The Court bears in mind that "an insurer's duty to defend its insured is broader than its duty to indemnify. If an insurer has no duty to defend, it has no duty to indemnify." *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010).

## DISCUSSION

The CSU moves for summary judgment seeking declaratory relief. Specifically, the CSU argues the Fireworks Exclusion releases the CSU from any duty to indemnify or defend CEVS in the Underlying Lawsuit. (Dkt. 74). The key issue is whether the Fireworks Exclusion applies to the injuries Mr. Rafferty alleged in the Underlying Lawsuit. The parties do not dispute that fireworks are defined in the exclusion as "a device consisting of explosives and combustibles set off to generate colored lights, smoke or noise." (Dkt. 75 at ¶ 24; Dkt. 79 at ¶ 24). The parties also stipulate that the Underlying Lawsuit asserts a flash bang device was used at the demonstration where Mr. Rafferty's alleged injuries occurred. (Dkt. 75 at ¶ 14; Dkt. 79 at ¶ 14). Neither party disputes that if the flash bang device qualifies as a firework, its use alone would preclude coverage. The parties disagree as to whether the definition for fireworks covers a flash bang device, and specifically the flash bang device allegedly detonated on August 4, 2018, at the Show. (Dkt. 74; Dkt. 78; Dkt. 80).

The CSU argues that flash bang devices are fireworks as defined in the Policy because they are "explosive and combustible devices which are 'set off to create colored lights, noise or smoke.'" (Dkt. 74). As basis for this assertion, the CSU refers to Mr. Rafferty's allegations in the

5

Underlying Lawsuit that a flash bang device "is an inherently dangerous explosive device originally developed for the military that produces high intensity light and extremely loud impulse noise at high decibel levels," and "the two [flash bang devices] at issue in the Underlying Lawsuit which were detonated in his presence caused successive and extremely loud explosions and flashes of light, which shattered glass on a van, caused loud ringing in both of Mr. Rafferty's ears and temporarily blinded him." (*Id.*).

CEVS argues the construction of the definition of fireworks as a device containing "explosives and combustibles" necessarily requires both explosives and combustibles be contained in any device in order for it to fit the definition in the Policy of a firework. (Dkt. 78). While CEVS concedes a flash bang device may be explosive in nature, CEVS cites to the Google definition for "combustible", as provided by Oxford Languages, as well as a definition from a blog on flash bang devices to bolster the claim that a flash bang device does not contain any combustible materials. (*Id.*). The CSU does not dispute that the definition of a firework in the Policy requires the device to contain both explosives and combustibles, but rather the CSU argues the flash bang device does contain a combustible. (Dkt. 80). Both parties claim a flash bang device is set off by the ignition of magnesium. (Dkt. 78; Dkt. 80). The CSU argues magnesium is a combustible material, pointing first to the description provided by CEVS of a flash bang device as "ignit[-ing] a magnesium-based charge." The CSU further cites to an OSHA definition for a "Class D fire" as "a fire involving combustible metals such as magnesium . . . ." (Dkt. 80).

In interpreting the language of an insurance policy, a court employs the same rules of construction applicable to other types of contracts. *Nicor, Inc. v. Assoc. Elc. And Gas Ins. Servs. Ltd.*, 223 Ill.2d 407, 416 (2006) (citing *Continental Casualty Co. v. McDowell & Colantoni, Ltd.*, 282 Ill.App.3d 236, 241 (1996)). The court must consider the policy in its entirety, taking note of

6

the overall purpose of the contract when interpreting the terms. *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill.2d 278, 292 (citing *Am. States Ins. Co. v. Koloms*, 177 Ill.2d 473, 479 (1997)). When interpreting a policy, if the term is not defined in the policy, the words are to be given their plain and ordinary meaning. *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 747 (7th Cir. 2008) (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 115 (1992)). Any doubt or ambiguity must be resolved in favor of the insured. *Panfil v. Nautilus Ins. Co.*, 799 F.3d 716, 719 (2015) (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 144 Ill.2d 64, 74 (1991)). Where any remaining ambiguity exists, the policy will be construed in favor of coverage for the insured. *Nicor*, 223 Ill.2d at 417 (citing *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill.2d 11, 17 (2005)).

However, a policy term will not be "considered ambiguous merely because the parties can suggest creative possibilities for its meaning. Rather, ambiguity exists only if the term is susceptible to more than one reasonable interpretation." *Nicor*, 223 Ill.2d at 417 (citing *Lapham-Hickey Steel Corp. v. Protection Mutual Ins. Co.*, 166 Ill.2d 520, 530 (1995)). Courts "will not strain to find an ambiguity where none exists." *Hobbs*, 214 Ill.2d at 17 (citing *McKinney v. Allstate Ins. Co.*, 188 Ill.2d 493, 497 (1999)). "Reasonableness is the key." *Bruder v. Country Mut. Ins. Co.*, 156 Ill.2d 179, 193 (1993).

In other cases where interpretation of the plain and ordinary meaning of a term is at issue in the interpretation of an insurance policy, courts have referenced Webster dictionary definitions. *Outboard Marine Corp.*, 154 Ill.2d at 115; *Supreme Laundry Service, L.L.C.*, 521 F.3d. at 747. The Merriam-Webster Dictionary defines "combustible" as "capable of combustion" where "combustion" is defined as "an act or instance of burning" or "a usually rapid chemical process

7

(such as oxidation) that produces heat and usually light". *Combustible*, *Combustion*, Merriam-Webster.com Dictionary (2022).

In determining whether a flash bang device contains combustible materials, this Court uses the description for a flash bang device provided by the non-moving, insured party, CEVS. As stated before, CEVS cited to a blog published by Charlotte Eye Ear Nose & Throat Associates, P.A. entitled *"How Do Flashbangs Work?"* in its response. (Dkt. 78). "It is designed to perform two functions: to 1) 'ignite a magnesium-based charge that releases a burst of light of around 7 million candela' – *the flash* – and to 2) 'create a noise louder than 170 decibels when ammonium nitrate is detonated' – *the bang*." (*Id.*). The insured party's own description of a flash bang device recognizes the device "ignite[s] a magnesium-based charge." CEVS argues a flash bang device is not a firework and does not contain any combustible materials because it does not contain any flammable materials and is not itself flammable. (*Id.*). By its own definition of a flash bang device, the device contains magnesium and in fact is designed to ignite the magnesium-based charge, fitting plainly into the Merriam-Webster's Dictionary definition of combustion: "a usually rapid chemical process (such as oxidation) that produces heat and usually light," and therefore fitting the definition of a combustible.

A "firework" is clearly defined in the Policy, and the definition is not ambiguous as applied to this claim. The definition, "a device consisting of explosives and combustibles set off to generate colored lights, smoke or noise," lends itself to only one reasonable interpretation when applied to a flash bang device. The only disputed portion of the definition is whether a flash bang device contains combustibles, and by applying the plain and ordinary meaning of a combustible, it is clear the magnesium ignited in a flash bang device fits this definition.

8

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion for summary judgment [73] is granted. The Policy's Fireworks Exclusion applies to exclude coverage for the underlying claim, and the CSU has no duty to defend or indemnify CEVS in the Underlying Lawsuit.

Plaintiff additionally seeks costs of suit and all other relief this Court deems proper under the circumstances, but Plaintiff's motion is silent on these issues. Before the Court can enter judgment, the parties must brief these issues. Plaintiff is therefore directed to brief the issues regarding costs of suit and all other proper relief on or before April 15, 2022. Once Plaintiff files its brief, Defendant is directed to respond to Plaintiff's brief within fourteen days of its filing.

_____
Virginia M. Kendall
United States District Judge

Date: March 28, 2022